### SERINTO *v.* BORMAN FOOD STORES.

#### OPINION OF THE COURT.

1. NEGLIGENCE—MAYONNAISE ON STORE FLOOR AISLE—NOTICE—QUESTION FOR JURY.

Evidence adduced in action by customer against storekeeper for personal injuries sustained by falling to floor of store aisle on broken jar of mayonnaise *held*, insufficient to raise a question for jury of notice or constructive notice on part of defendant.

2. APPEAL AND ERROR — DIRECTED VERDICT — EVIDENCE — SCINTILLA RULE.

So-called "scintilla rule" under which a scintilla of evidence will defeat a motion for directed verdict does not apply in this State.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 23, 24, 32, 131, 133, 136, 332, 344; 20 Am Jur, Evidence § 336.
Liability of proprietor of store, office, or similar business premises for injury from fall due to presence of litter or debris on floor. 61 ALR2d 6.
[2] 53 Am Jur, Trial §§ 348, 356, 360, 365.
[3] 53 Am Jur, Trial §§ 347, 349, 350, 357, 360.
[4] 53 Am Jur, Trial § 360.
[5, 6] 53 Am Jur, Trial §§ 349, 350, 355, 357, 358.
[7] 53 Am Jur, Trial §§ 355, 357; 30A Am Jur, Judgment §§ 292, 297, 300.
[8] 5 Am Jur 2d, Appeal and Error § 760; 38 Am Jur, Negligence §§ 23, 24, 32, 131, 285.
[9] 38 Am Jur, Negligence §§ 291, 332, 333.
[10] 38 Am Jur, Negligence § 290; 20 Am Jur, Evidence §§ 157, 159; 53 Am Jur, Trial §§ 185, 186, 1142.
[11] 38 Am Jur, Negligence § 290; 20 Am Jur, Evidence §§ 158, 162.
[12] 38 Am Jur, Negligence §§ 344, 345, 356.
[13] 38 Am Jur, Negligence §§ 19, 23, 32, 131.
[14] 38 Am Jur, Negligence §§ 344, 345, 356.
[15] 5 Am Jur 2d, Appeal and Error § 886.

(183)

3. SAME—DIRECTED VERDICTS—EVIDENCE.

All of the evidence in the record should be considered by the trial judge when passing on a motion for directed verdict, including that which supported and that which detracted from the issue in question, and then give the party against whom such motion is made the benefit of the most favorable interpretation of the evidence as a whole and the benefit of all reasonable inferences, and he should direct a verdict whenever he would have the duty to set aside a contrary verdict as being against the weight of the evidence.

4. SAME—DIRECTED VERDICTS—EVIDENCE.

Rule as to directed verdicts does not allow the trial judge to direct a verdict whenever he might, or even would, set aside a contrary verdict, but only when he would have the duty to set aside such a verdict and would be reversed for failing to do so.

5. SAME—DIRECTED VERDICTS—EVIDENCE.

Rule as to directed verdicts enlarges the function of the judge by directing him to look at the evidence on the whole record, and thus, permits him to direct a verdict in the face of evidence which, standing alone, might be enough to sustain a contrary finding, but which leaves no room for reasonable minds to disagree when considered in the light of the overwhelming contradictory evidence in the record.

6. SAME—DIRECTED VERDICTS—EVIDENCE.

Rule as to directed verdicts at best describes an approach or a judicial attitude, and the dominant characteristics of ·this approach is that the right to trial by jury must be preserved, but that the judge has the responsibility of considering the record as a whole in determining whether the evidence supplies any reasonable basis for a jury finding contrary to the requested verdict.

7. SAME—DIRECTED VERDICTS—EVIDENCE—JUDGMENT NOTWITHSTANDING VERDICT.

Standards which govern the judge's decision upon motion for a directed verdict apply in the case of a motion for judgment notwithstanding the verdict grounded on a challenge to the sufficiency of the evidence.

DISSENTING OPINION.

LESINSKI, C. J.

8. APPEAL AND ERROR—ISSUES—PRIMA FACIE PROOF OF NOTICE OF DANGEROUS CONDITION.

*Issue on appeal in customer's negligence action against store-keeper would be limited to question of whether plaintiffs proved prima facie notice or knowledge of the existence of a dangerous condition upon defendant's premises, where record is clear that no actual notice of a dangerous condition was shown.*

9. NEGLIGENCE—DANGEROUS CONDITION OF STORE AISLE—TIME—EVIDENCE.

*The element of time when dangerous condition of floor of store aisle came into being held, reasonably inferable from other evidence adduced and the description of the premises in customer's action against storekeeper for injuries sustained as result of fall on broken jar of mayonnaise.*

10. EVIDENCE—ULTIMATE FACTS—INFERENCE FROM FACTS—PROBABILITY.

*The ultimate fact in civil cases involving only property rights may be proved by an inference from facts which are established by direct evidence, that it be more probable than any other inference which could be drawn from the facts thus proven.*

11. SAME—INFERENCE FROM FACTS—EVIDENCE—NOT PRESUMPTIONS.

*Reasonable inferences which may be drawn from the affirmative facts proven are evidence, and not presumptions.*

12. NEGLIGENCE—CONSTRUCTIVE NOTICE OF DANGEROUS CONDITION—EVIDENCE.

*Constructive notice of storekeeper as to existence of dangerous condition of premises held, question for jury in customer's action for injuries sustained as result of fall on broken jar of mayonnaise.*

13. SAME—DUTY TO CUSTOMERS—UNSAFE CONDITION OF PREMISES.

*A storekeeper is not a guarantor or insurer of the safety of his customers, but he is liable for injury resulting from an unsafe condition caused by his active negligence or that of his employees, or if such condition, otherwise caused, is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it in the exercise of reasonable care.*

14. Same—Dangerous Condition—Time of Existence—Question for Trier of Facts.

> Question of what is a sufficient length of time for a dangerous condition to exist so as to conclude that one did not exercise reasonable care to discover it, by one charged with the duty to do so, is a question for the trier of facts.

15. Appeal and Error—Directed Verdict—Judgment Non Obstante Veredicto—Sufficiency of Evidence.

> Facts are viewed in the light most favorable to the opposing party on review of a trial court's refusal to grant a motion for a directed verdict or judgment non obstante veredicto, and if reasonable men could honestly reach a different conclusion, viewed in such light, the question is for the jury.

Appeal from Wayne; Streeter (Halford I.), J., presiding. Submitted Division 1 November 2, 1965, at Detroit. (Docket Nos. 262, 263.) Decided May 11, 1966. Leave to appeal granted by Supreme Court July 26, 1966. See 378 Mich 725.

Declaration by Catherine Serinto against Borman Food Stores, a Michigan corporation, for injuries allegedly sustained in a store owned by defendant. Derivative suit by Anthony Serinto. Cases consolidated for trial. Verdict and judgment for plaintiffs. Defendant appeals. Reversed.

*Jerry P. D'Avanzo,* for plaintiffs.

*Cary, BeGole, Martin, Bohall & Joselyn (Lawrence A. Bohall,* of counsel), for defendant.

Watts, J. This is an appeal from judgments awarded to the plaintiffs in 2 suits tried concurrently. The theory was negligence, and the incident which gave rise to the motion was a fall taken by plaintiff in defendant's supermarket.

The facts as stated by defendant in its brief are undisputed.

On Good Friday, March 27, 1959, plaintiff Catherine Serinto was dropped off by her husband, plaintiff in the derivative suit, at defendant's Food Fair grocery market in Lincoln Park. The time was about 10:50 a. m.

The general layout of the store was described by Mrs. Serinto at the trial. The store was laid out in a square with about 5 aisles running from front to back. These aisles were bisected by an aisle down the middle from side to side.

Mrs. Serinto entered the store through the front door, got a shopping cart, and went to the meat counter. As she continued her shopping, Mrs. Serinto skipped aisle 2, turned into aisle 3 at the front of the store, traveled the entire length of aisle 3 to the back of the store, and turned into aisle 4 to proceed down that aisle toward the front.

Mrs. Serinto turned the corner into aisle 4 at the back of the store, took some articles off a shelf, took a few steps and slipped on what was subsequently shown to be a broken jar of mayonnaise and fell. This mayonnaise was located about a foot or a foot and a half from the display shelf on the left side as one faced the front of the store. It was creamish white in color, and the condition of the floor in the store (other than the area of the broken jar) was clean and clear, including aisle 4.

The store was almost empty of customers when Mrs. Serinto first went in, since it was to close at noon. She had been shopping about 50 minutes before she fell and in that time had not observed any stock boys on the floor.

There was a checkout counter at the front of the store directly down the aisle in which Mrs. Serinto fell. After the accident, she went to the cashier at that checkout counter and told her that she had slipped on a jar of mayonnaise "back there" and

fallen. From where the accident occurred, Mrs. Serinto could see the cashier at the checkout counter.

Mrs. Serinto testified that she was familiar with the sound of a jar breaking on a hard floor, and that during the approximately 50 minutes she was in the store, she had not heard anything resembling the sound of a jar breaking.

Mrs. Serinto brought suit in the lower court, claiming defendant Borman was negligent in carelessly allowing the broken jar of mayonnaise to be upon the floor of an aisle in which customers were invited to walk. Mr. Serinto brought a derivative suit on the same theory for medical expenses, loss of services, and consortium. Defendant Borman denied negligence and denied that it had notice or knowledge of the presence of the mayonnaise.

At the trial with jury after the plaintiffs had concluded their proofs, defendant moved for a directed verdict, asserting that plaintiffs had failed as a matter of law to prove a prima facie case on the issue of notice or knowledge of the presence of a dangerous condition. The court took the motion under advisement.* Defendant did not offer proofs, and after both sides rested, renewed its motion for directed verdict which the court again took under advisement.

The jury returned a verdict in favor of Mrs. Serinto for $5,000, and for Mr. Serinto for $1,500. Judgments were entered, whereupon defendant filed a motion for judgment notwithstanding the verdict, reasserting that plaintiffs failed to prove a prima facie case of knowledge of the dangerous condition. Motion was denied, and defendant appeals.

The sole issue raised in these appeals is whether or not the plaintiffs proved a prima facie case of notice or knowledge as a matter of law. Stated an-

---

* See GCR 1963, 515.2 and committee comment.—REPORTER.

other way, the question is: Was there enough evidence to raise a question of notice or constructive notice on the part of the defendant so that the matter should have been submitted to a jury for determination. We hold that there was not and that the court erred in submitting the question to the jury.

In 2 Honigman & Hawkins, Michigan Court Rules Annotated, § 515, authors' comments, p 530, an excellent discussion, which is concerned with directed verdict and judgments, gives a succinct and extremely helpful statement of the Michigan rule covering the problem. After discussing the so-called "scintilla rule" under which a scintilla of evidence will defeat a directed verdict, and emphatically rejecting this rule as Michigan law, the authors proceed to set forth the Michigan rule as follows:

"The most widely accepted contemporary formulation is that the trial judge should consider all of the evidence in the record, including that which supports and that which detracts from the issue in question, and, giving the party against whom the motion for a directed verdict is made the benefit of the most favorable interpretation of the evidence as a whole and the benefit of all reasonable inferences, should direct a verdict whenever he would have the duty to set aside a contrary verdict as being against the weight of the evidence.

"This rule does not allow the trial judge to direct a verdict whenever he might, or even would set aside a contrary verdict, but only when he would have the duty to set aside such a verdict and would be reversed for failing to do so. The important feature of this rule is that it enlarges the function of the judge by directing him to look at the evidence on the whole record and, thus, permits him to direct a verdict in the face of evidence which, standing alone, might be enough to sustain a contrary finding, but which leaves no room for reasonable minds to disagree when considered in the light of the over-

whelming contradictory evidence in the record. See Joiner, Trials and Appeals, 1957 § 526; Cavitch, Federal Courts—Directed Verdicts in Civil Actions (1949), 47 Mich L Rev 974.

"While the language in Michigan decisions has not always been consistent, this last formulation appears most accurately to state the prevailing rule. See 22 MLP, Trial, §§ 159, 160; 14 MLP, Judgment, § 94 and cases digested under Michigan Decisions, *infra.* The particular verbalization of the rule may vary, and the formula, in any event, is not self executing. At best it describes an approach or a judicial attitude. *The dominant characteristics of this approach or judicial attitude in Michigan are that the right to trial by jury must be preserved, but that the judge has the responsibility of considering the record as a whole in determining whether the evidence supplies any reasonable basis for a jury finding contrary to the requested verdict.*

"The same standards which govern the judge's decision upon a motion for a directed verdict apply in the case of a motion for judgment notwithstanding the verdict, grounded on a challenge to the sufficiency of the evidence. *Yacobian* v. *Vartanian* (1922), 221 Mich 25." (Emphasis supplied.)

We have thoroughly reviewed the record on appeal in the instant case and fail to find sufficient evidence to raise a question of fact as to defendant's notice of the dangerous condition.

Applying the Michigan rule as set forth in Honigman & Hawkins, *supra,* the judge had the duty to set aside the verdict.

Judgment reversed, costs to the defendant.

QUINN, J., concurred with WATTS, J.

LESINSKI, C. J. (*dissenting*). Defendant processed this appeal upon denial by the trial court of a motion for a judgment *non obstante veredicto.*

The writer accepts the facts set forth in the majority opinion as properly reflecting the pertinent facts proven in this cause.

The issue on appeal is limited to the question of whether or not the plaintiffs proved prima facie notice or knowledge of the existence of a dangerous condition upon defendant's premises.

It is clear from a reading of the record that no actual notice of a dangerous condition was shown. Plaintiff sought to prove constructive knowledge or notice to the defendant of the existence of a dangerous condition on the premises.

There is no disagreement between the writer and the majority on the question of the rules of law that govern the situation. However, there is a difference of opinion as to the application herein of the said rules.

Regarding the question of constructive notice, plaintiff established by uncontroverted testimony that she was in the defendant's store from 45 to 50 minutes before the accident; that she was familiar with the sound a glass jar would make when it fell on a fairly hard floor; that she heard no such sound while she was in the store; that there was hardly anyone in the store, it was almost empty; that she was all alone in the aisleway when she fell; that while she was in the store no stock boys or clerks were on the floor; that the floor tile was of a light color; and that the jar of mayonnaise on which plaintiff slipped was a light color.

The only evidentiary fact not proven directly, which is necessary for the jury to make a valid determination of the question of whether defendant should have known that a dangerous condition existed on the premises, is when the jar fell. This vital element is supplied by inference reasonably drawn from the facts proven as stated above and from the description of the premises. The elimination of the

probability that the jar fell and broke while she was
in the store, by the reasoning that she would have
heard it if it did fall while she was in the store, is
but part of the inferential reasoning process and
not the inferred fact itself. From direct evidence
that a person in a store with few customers present,
within 2 or 3 aisles of the place where the broken
jar of mayonnaise was lying on the tile floor, and
such person having heard no sound resembling the
one made by a jar breaking against a floor, one
could reasonably infer that the jar of mayonnaise
did not fall and break while such person was in the
store. This inference is not bare conjecture. It
relies on no other inference to make it. It is fairly
drawn from other facts established by the proofs.
We are satisfied that the desired inference meets
the test as set forth by 1 Wigmore on Evidence
(3d ed), § 41, p 439, quoting from the case of *New
York Life Insurance Co.* v. *McNeely* (1938), 52 Ariz
181 (79 P2d 948):

"In civil cases, involving only property rights,
* * * it is sufficient, if the ultimate fact is to be
determined by an inference from facts which are
established by direct evidence, that it be more prob-
able than any other inference which could be drawn
from the facts thus proven."

The Supreme Court in *Butrick* v. *Snyder* (1926),
236 Mich 300, 305 said:

"The reasonable inferences which may be drawn
from the affirmative facts proven are evidence, and
not presumptions."

The jury having before it the proven facts and
the evidence supplied by the inference based there-
on was in a position to pass upon the question of
whether defendant had constructive knowledge of

the existence of a dangerous condition upon the premises.

The duty of storekeepers toward customers is laid down in cases starting as early as *Brown* v. *Stevens* (1904), 136 Mich 311, on through *Wine* v. *Newcomb, Endicott & Co.* (1918), 203 Mich 445; *Yarington* v. *Huck* (1922), 218 Mich 100; *Shorkey* v. *Great Atlantic & Pacific Tea Co.* (1932), 259 Mich 450; *Filipowicz* v. *S. S. Kresge Co.* (1937), 281 Mich 90.

A storekeeper is not a guarantor or insurer of the safety of his customers. However, he is liable for injury resulting from an unsafe condition caused by his active negligence or that of his employees, or if such condition, otherwise caused, is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have knowledge of it in the exercise of reasonable care.

The question of what is a sufficient length of time for a dangerous condition to exist so as to conclude that one did not exercise reasonable care to discover it, by one charged with the duty so to do, is a question for the trier of facts. This gives rise to the question of whether or not the evidence introduced during trial is sufficient to stand the test of defendant's motion for a judgment *non obstante veredicto*. The rule regarding the sufficiency of evidence was recently set forth in a 1963 Michigan Supreme Court case of *Sparks* v. *Luplow* (1963), 372 Mich 198, 202:

"It is a well-settled principle of law that on review of a trial court's refusal to grant a motion for a directed verdict or judgment *non obstante veredicto*, the facts are reviewed in the light most favorable to plaintiff. *Tacie* v. *White Motor Co.*, 368 Mich 521, 527. The test used is whether from the facts in the light most favorable to plaintiff, reasonable men could honestly reach a different

conclusion. If the answer to this is 'yes,' the question is for the jury. *Anderson* v. *Gene Deming Motor Sales, Inc.,* 371 Mich 223."

In *Sparks, supra,* the situation is quite comparable to the present case. There the plaintiff slipped on a banana while shopping in defendant's store. There was no direct evidence as to how long the banana had been on the floor. The only direct evidence was that the manager of the store had passed the spot where the accident occurred only 5 minutes prior to the accident and had not seen a banana at the time; that the janitor if he were performing his usual duties would have swept that aisle within the half hour preceding the fall; and that another employee had been working within 2 or 3 feet of the point of the accident immediately before the fall.

Based on the holding in *Sparks, supra,* the jury in the instant case had before it sufficient evidence to find that the defendant had constructive notice of a dangerous condition upon its premises.

The judgment should be affirmed, with costs to appellee.