902 F.2d 32
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David AFFER, Linda Affer, Plaintiffs-Appellants,
v.
CONSOLIDATED RAIL CORPORATION, Defendant-Appellee.
 No. 89-1764.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1990.
 
 Before MERRITT, Chief Judge, RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiff appeals the District Court's granting of defendant's motion for j.n.o.v. and conditional granting of a new trial. We reverse the granting of the j.n.o.v. motion, but affirm the granting of a new trial and remand for that purpose.
 
 I.
 
 2
 Plaintiff, David Affer[1] was employed by City Car Terminal, Inc. City Car had a service contract with Con Rail and conducted its business at Con Rail's North Yard. Under the service contract, Con Rail supplied City Car with bridgeplates, plates which were attached to railcars for the purpose of loading and unloading cars and trucks, much like a ramp.[2]
 
 
 3
 Plaintiff was employed as a "tie-down" man, and it was his job to tie down vehicles which had been loaded onto Con Rail railcars. One of his duties was attaching bridgeplates to the railcars so that cars could be loaded. According to the testimony at trial, the bridgeplates were used only for this purpose, and when they were not in use they were stacked near the railroad tracks.
 
 
 4
 When Plaintiff arrived at work the morning of the accident, the bridgeplates had already been attached. Plaintiff tied down the vehicles in the first railcar and was proceeding to the second railcar when the accident happened. According to Plaintiff's testimony, he glanced down at the bridgeplate to insure that it was properly aligned. Plaintiff testified that the pin mechanism which held the bridgeplate to the railcar broke, causing him to fall between two railcars. He testified that after the accident he noticed a pin near a fence and observed that the bridgeplate on which he had been walking was old and worn.
 
 
 5
 However, the accident report which plaintiff's supervisor filled out tells a different story. His supervisor claims, and the report reflects, that plaintiff slipped while crossing between two railcars. The supervisor claims plaintiff did not mention a defective bridgeplate or pin mechanism.
 
 
 6
 Two of Con Rail's foremen inspected the scene approximately two hours after the accident. When they arrived at the scene they found all the bridgeplates in use, and found no defect in any of those bridgeplates. The foremen inferred from what they found that the bridgeplate involved in plaintiff's accident had been reattached and was in use again.
 
 
 7
 Plaintiff sued Con Rail for injuries he sustained in the fall on the theory that Con Rail was negligent in maintaining and repairing the bridgeplates, and that defendant's negligence caused his accident. Con Rail argued at trial that it was not negligent in maintaining the bridgeplates, that several vehicles had been driven over the plates prior to plaintiff's accident, and that it could not possibly have been on notice that that particular plate was defective.
 
 II.
 
 8
 Under Michigan law, in order to prove a prima facie case of negligence, plaintiff must prove:
 
 
 9
 1. that defendant owed a legal duty to plaintiff.
 
 
 10
 2. that defendant failed to exercise ordinary care, thereby breaching his duty
 
 
 11
 3. that defendant's negligence proximately caused plaintiff's injuries
 
 
 12
 May v. Parke, Davis & Co., 142 Mich.App. 404, 411 (1985).
 
 
 13
 It is undisputed that defendant owed a legal duty to plaintiff to inspect and repair broken bridgeplates. Next plaintiff must prove that defendant knew or should have known that the unsafe condition existed. Suci v. Mirsky, 61 Mich.App. 398 (1975). Plaintiff claims that it was proper for the jury to infer a breach of Con Rail's duty to plaintiff because Con Rail failed to inspect the bridgeplates. Defendant argues that because several vehicles were driven over the bridgeplate just prior to plaintiff's accident it could not possibly have been on notice that the bridgeplate was defective, if indeed it was.
 
 
 14
 Although the evidence to support plaintiff's version is very weak, the question of negligence in this case is one that falls within the province of the jury. The jury was entitled to infer from the evidence that Con Rail had no policy or procedure by which to inspect and replace defective bridgeplates. The jury was also entitled to infer from the evidence that the failure to inspect the bridgeplates proximately caused plaintiff's injuries. The jury must have believed that had Con Rail inspected the bridgeplates on a regular basis it might have discovered a defect in the bridgeplate involved in this case. The fact that several vehicles were driven over the plate just prior to plaintiff's fall does not negate the possibility that defendant was liable. If plaintiff's testimony is accepted as true, it is for the jury to decide whether an inspection of that particular bridgeplate might have prevented the accident. Thus we must reverse the judgment notwithstanding the verdict entered by the District Court.
 
 III.
 
 15
 Plaintiff next argues that even if he could not make out a prima facie case of negligence, the doctrine of res ipsa loquitur supplied an inference of negligence. Under Michigan law res ipsa loquitur has four requirements:
 
 
 16
 1) the event must be of a kind which ordinarily does not occur unless someone is negligent.
 
 
 17
 2) the event must be caused by an instrumentality within the exclusive control of the defendant.
 
 
 18
 3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff.
 
 
 19
 4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.
 
 
 20
 Jones v. Poretta, 428 Mich. 132, 150-51 (1987) (citations omitted).
 
 
 21
 The trial court found that "an inference of negligence on the part of defendant is not consistent with the known facts." Slip op. at 30. Plaintiffs failed to meet their burden on the first prong of the test. There are many possible causes for this accident, and accidents of this type could very possibly occur without Con Rail being negligent. Some possible causes include plaintiff slipping, or a City Car employee attaching the bridgeplate improperly.
 
 
 22
 Secondly, the bridgeplate was not in the exclusive control of the defendant, thus plaintiff fails on the second prong of the res ipsa test. City Car employees were the ones who handled the bridgeplates for the most part, not Con Rail employees. We agree with the trial court's holding that "[b]ecause plaintiff fails to meet at least two essential conditions of res ipsa loquitur, a presumption of negligence on the part of defendant would be improper." Slip op. at 51.
 
 IV.
 
 23
 In Toth v. The Yoder Co., 749 F.2d 1190, 1197 (6th Cir.1984), the Sixth Circuit set out the standard for a trial court to use in considering whether to grant a new trial: "it is the duty of the judge to set aside the verdict and grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence." The trial judge's decision should be overturned only if the trial judge abused his discretion. Id.
 
 
 24
 The only evidence to support plaintiff's version was his own testimony. Although the jury was entitled to make a judgment based on plaintiff's credibility, the District Judge did not abuse his discretion in granting a new trial because the verdict was against the clear weight of the evidence.
 
 
 25
 Accordingly, the District Court's order granting j.n.o.v. is reversed and the case is remanded for a new trial.
 
 
 
 [1]
 The jury awarded plaintiff David Affer $1.1 million in damages. David Affer's wife, Linda, is also a plaintiff in this suit. She sued Con Rail for loss of consortium and the jury awarded her $100,000 in damages
 
 
 [2]
 The relevant contract provision is as follows:
 Contractor [City Car] shall perform the operation to raise and lower fixed plates and apply, remove and install portable plates supplied by Con Rail at locations designated by Con Rail's Technical Representative. Con Rail will assume the responsibility of scrapping old plates and providing replacement plates as required.